I would be pleased to hear argument in Dingle v. Warden. Good morning, Your Honors. Steve Van Stempfort for Appellant Mr. Dingle. May I proceed? Your Honors, I think there's an important thing to note at the beginning of this case, and that is that neither of the parties disputes that Roper is a substantive rule. And, of course, when you have a substantive rule change, the timing of the rule change is irrelevant because the same rule applies to everybody equally going backward or forward in time. And what that means is that the consequences of Roper have to be the same for Mr. Dingle as the consequences of Roper are for somebody going forward, for a 17-year-old defendant who commits murder in South Carolina tomorrow. So, in other words, if the state can't do what it did to Mr. Dingle, if the state can't do that now with respect to a 17-year-old defendant tomorrow, then Dingle is entitled to relief. And, again, that's how a substantive rule works. What the state is trying to do in this case is... Isn't that the answer to the very question that we asked you to argue? Well, I think if you look at Montgomery, right, Montgomery was... The whole question is whether that Roper should be applied to invalidate a guilty plea, and you just said yes, but, I mean, why? Well, I think Montgomery is very clear that Roper is a substantive rule. I mean, Montgomery says... That doesn't answer Judge Wilkinson's question to you. That doesn't answer the question in this case, even if we accept it's a substantive rule, right? Well, and exactly. So I think... You have to go forward. You have other roads to go before you win, right? And I think I explained those in our brief. And here's how I set it up. So, yes, Roper is a substantive rule, and I think everybody is on board with that, in terms of what the court said in Montgomery. Montgomery says Miller's a substantive rule just like Roper was. So the rule in Roper is definitely substantive, which means it applies retroactively. And then the question... I understand that, and that would be, I think, an important point, if somehow, in violation of Roper or Montgomery, some juvenile was actually being sentenced to death. But there's no capital sentence here. And so when Roper and Montgomery together says there should be no death penalty for juveniles, absolutely. But here there is no death penalty for a juvenile. No juvenile is going to be put to death. And I think the answer to that quandary, that question, is, okay, what does Roper change? So obviously Roper... And the rule of Roper really is, yes, juveniles are ineligible for the death penalty. Now, the state says, well, that only changes, that only applies to defendants who were actually sentenced to death. But the question is what... I think there are other consequences that are pretty clear. And, again, my hypothetical about the 17-year-old who commits murder in South Carolina tomorrow makes that clear. Because if that position is correct, Your Honor, if the State is right about this, then if the 17-year-old who commits murder in South Carolina tomorrow, then the State can still notice the death penalty against that defendant. Because, again, if Roper doesn't apply until there's actually a sentence, then that means the State is perfectly able to notice the death penalty against them, even though that's a penalty that they're constitutionally barred. But that's not what happened here. And, you know, the State post-Roper did not seek the death penalty. Well, that's clearly correct. But, again, the nature of the substantive rule means that they have to treat Dingell, Mr. Dingell, the same way that they would treat him after Roper. And if after Roper they can't notice the death penalty against him, they can't because when they notice the death penalty, that triggers certain mandatory provisions under South Carolina law. So he was subject to a mandatory life punishment. And if the State's position is that Roper does not prevent a State from seeking the death penalty post-Roper, that seems pretty bizarre. And I think that flatly contradicts Supreme Court precedent that we cited in our brief. They didn't seek a death penalty post-Roper. I mean, you keep saying that, but that's not what the facts of this case are. If they had sought a death penalty post-Roper, number one, it would have been absurd. And number two, it would be a different case from what we have here. One question I'd like to ask you. This comes before us on 2254. And so we would have to hold that the South Carolina Supreme Court, which ruled on this question of the merits, made an unreasonable or clearly unreasonable determination of federal law. Now, circuit courts are being reversed summarily, particularly in the Ninth Circuit, if it's not contagious. For upending state courts on 2254, when the state court has not rendered an unreasonable question of state law, why isn't the procedural posture of the case under AEDPA a difficult one for you to overcome? Well, so a couple answers to that. And first, as we set forth in our brief, on page 15 of our brief, we talk about how the state has actually conceded all the constituent elements here. I mean, they've conceded that the claim was never raised in the initial appeal of the post or of the speedy trial motion. Can I ask you a question, counsel? But didn't you argue on the first habeas petition that you had exhausted this claim, this Roper claim, on direct appeal? Did I argue on the first? I don't know if it was you. I'm sorry. Didn't the defendant argue on the first habeas petition that this was, in fact, exhausted because it was presented to the State Supreme Court on direct appeal? So this was the first habeas petition in South Carolina? Yes. When the first habeas court made a finding that, yes, you had, in fact, your client, in fact, had exhausted this by presenting it to the State Supreme Court. I don't understand why you're not a bit estopped now from arguing that it wasn't presented to the State Supreme Court. I mean, I'd have to go back and check the first habeas proceeding. Of course, the first 2254, there was never a final decision on it. So under Domino Sugar, I mean, that's not going to collaterally stop us. So that answers, I think, that question. As far as the merits, the adjudication on the merits, I think, yeah, number one, I mean, the State has conceded that there was no adjudication on the merits, and I think that estopped them. And second, if you look through. I'm not sure there wasn't any adjudication on the merits. You're saying that the State Supreme Court, there's no merit to Dingell's argument that he did not get the benefit of the bargain because the death penalty later became unconstitutional for minors, and then the State Court proceeds to reject that argument. But that seems to me to pose a question pretty much that's before us today, Dingell's argument that he did not get the benefit because the death penalty later became unconstitutional for minors. And then the State Supreme Court says why they didn't accept it. And maybe it's not phrased in exactly in hyperverbal the way the question is phrased here, but it's awfully close. Well, it's obviously they say they cite Roper, and I think that's about as close as it gets, because the claim here that we have today that he is pursuing now is a due process claim. And by the time, when he filed his speedy trial motion, Roper hadn't even been decided. And so, in fact, his attorney said at the hearing, yeah, we recognize that Roper, you know, just was decided before the hearing, and we realize that if we need to pursue. He said this is going to be our second habeas claim. Exactly. So we have to go in the second PCR, which is exactly what he did. And so the speedy trial motion, and again, I think I explained this in the brief, but the speedy trial motion never dealt with the merits of a claim that his plea was coerced or unknowing because of Roper. His speedy trial motion was essentially an argument about the proper interpretation of the first PCR court's order. And the argument was that the A, that the prosecution had breached the plea agreement in some respect, or at least that he had the option of choosing a new trial or a re-sensing. To clarify, there's no contention here that the plea was involuntary in any traditional sense, that it was not voluntary? Oh, I think so. I certainly think so. And, again, this kind of gets back to what we were talking about earlier. Because the way, and I perfectly understand the state's position in as much as they said, look, everybody was relying on Stanford v. Kentucky, which had been decided in 1992, only three years prior to his plea. And so under prevailing law at that time, everybody assumed that this was just an ordinary plea environment. But every plea is taken under the law, the prevailing law at that time, and as long as a free choice was made, then it would not render the plea involuntary. See, part of what I'm looking at here is a plea that seems to me to be voluntary and that there's no Missouri v. Fra problem. Is there because there's no contention, or at least it's not before us on any kind of certificate of appealability, that ineffective assistance of counsel was rendered in coming to the plea? I mean, the plea, by all the traditional criteria, soured. And so at the time, there are a couple of things there. So obviously there was ineffective assistance, and that is a finding by the first PCR court. Now, yes, I agree procedurally. It's a real question about whether we have an independent claim that's still viable here, an independent ineffective assistance claim. I would love to have one. Procedurally, I'm not entirely sure that we can get there. But the fact remains that the PCR court, first PCR court, did find that his plea was effected through ineffective assistance of counsel. Oh, and that was corrected. Pardon me? It was corrected. He got the benefit of his bargain, as the state court said. Well, that's what the state court said. And I think it's pretty clear under Hilvey-Lockhart and McManery-Richardson, if a plea is entered through ineffective assistance of counsel, if that's how the plea is effectuated, that plea is invalid. You can't just hold them to some whatever plea bargain. The plea is invalid. So I think the state court just got that one wrong. And I think the way that ROPER helps my client now is, so ROPER gives us new information about what the plea environment was actually like in 1995. So in 1995, everybody thought this was an ordinary plea environment. It wasn't coercive. In 2005, ROPER decided, and suddenly we realized, wait a minute, this was a more coercive environment than we thought. Can I ask you a question about that? Because this is going to give you a chance, I guess, to address a concern I have. I mean, there are going to be a lot of pleas that were entered into in the shadow of the juvenile death penalty or now juvenile life without parole sentences. And I've read Montgomery several times, and I can't find any indication in there that the Supreme Court thought that what it was doing when it held those decisions retroactive, held that they were retroactive on collateral review, was reopening not only the sentences that were entered into under those provisions, but every single plea agreement that was entered into under the shadow of those former regimes. I mean, that is a huge floodgates problem, and I would have expected the Supreme Court to have said something about it if they thought that's what they were doing. But do you have an answer for why I should be less concerned about the floodgates issue here? Yeah, and I think two points. One, obviously, that consideration, there's no evidence that that was ever raised before the Supreme Court, so, I mean, they haven't decided that issue. And second, I think what we have here is a really remarkably unique set of circumstances, right? So, and if you look at Brady, we talk a lot about Brady in a brief, but what Brady really says is, look, you know, we expect, you know, Borden, Crooker v. Hayes, right? We expect a plea bargaining process. There's some threats on the part of the government, and there's counsel to mitigate some of those threats. Here, you have a scenario where suddenly we realize that the threat element is much more significant than we thought. I mean, it's actually a threat of doing something that was out of bounds for the State. And then we also have this very unique scenario where you have a finding by a court that he actually received ineffective assistance. Well, the court doesn't say that, right? The court doesn't say ineffective assistance of counsel. The court says his lawyer didn't catch this thing about when he'd be eligible for parole, and the judge gave him some bad instructions to, this isn't an ineffective, I mean, there is no finding of ineffective assistance of counsel. I'm just trying to figure out if we were trying, you're suggesting we could write this really narrowly so it hinges on this finding of ineffective assistance, but there is no finding of ineffective assistance. Well, I mean, the court only cites two cases for, as a basis for its ruling, and both of those are ineffective assistance cases. And so I think the notion, I mean, obviously the court was not entirely clear. It was perfectly clear with what it was doing. But if there had been ineffective assistance, you actually, as you point out, then you have to let the defendant withdraw the plea. And that's not the relief that the court gives. Well, it's not the relief that the court gives, but the relief, I mean, the court was wrong. Because what the court is saying is that the court was right because it hadn't found ineffective assistance of counsel. And so the relief it gave was entirely appropriate. Well, I mean, the question there, then, what is the basis for the court's ruling? I mean, what's the error that they found? Because if you don't find ineffective assistance of counsel. The ruling you're talking about is having the benefit of the bargain realized by the 30 years? The ruling I'm talking about is the first PCR decision that said, hey, we're just going to, you're entitled to something, either a new trial or resentencing. And, again, if ineffective assistance was not the, can I finish answering the question? Certainly. Thank you, Your Honor. If ineffective assistance was not the basis of that first PCR court's holding, then what is? I mean, there's nothing else. The prosecution didn't reach the plea agreement. And there's no other basis for the holding. So it has to be ineffective assistance. And that means that the first PCR court's remedy that they gave them was just wrong. I mean, they should have, if ineffective assistance is the only basis for holding, he should have been let out of that plea. So you think that when the court said you're entitled to a new trial or a revision of your sentence, that that was his choice? Is that what you're saying? That was the defendant's choice? I think what the court did was it said, I'm going to give you the relief that was, that's under Santabella v. New York. Which, again, that's the case that involves when the prosecution breaches the plea agreement, then the defendant gets to choose. Or there's multiple forms of relief that are available. Either you can hold the defendant to the plea agreement and give them the benefit of the agreement, or you can set it for a new trial. So what the first PCR court did was it gave them the relief under Santabella, and Santabella just doesn't apply because we're not talking about a breach of the plea agreement. We're talking about ineffective assistance. So the PCR court's relief was incorrect. I guess you'd be talking about ineffective assistance when the lawyer apparently got a pretty good deal for the client in light of a law as it existed at that time. I mean, I would imagine most lawyers would have been very pleased with, hey, my client didn't get the death penalty, and my client also didn't get life without parole. In most instances, prosecution declines to bring the death penalty because life without parole is out there. But this petitioner did even better than that. I'm way out of time. Can I answer your question, Your Honor? I want you to answer it on rebuttal. I will do. Thank you. Mr. Simon, I'd be happy to hear from you. May it please the Court. My name is Al Simon. I am with the South Carolina Attorney General's Office, and I am here on behalf of the warden in this case. The State submits that at issue in this case is whether the holding in the United States Supreme Court's decision in Roper v. Simmons applies to the appellant Mr. Dingell's case, and if so, whether his guilty plea was unknowing and involuntary in light of Roper's holding. Respondent submits that Roper does not apply to this case. The South Carolina Supreme Court and the district court were correct in finding that Roper did not apply to this case because Mr. Dingell was never, he never received a death sentence, which is what the holding in Roper prohibits. Mr. Simon, can you clear up for me what the State's position is with respect to whether Dingell raised the Roper claim in the first PCR? I read in your brief that you conceded he hadn't. I'm not sure it makes any difference, but it is determinative about whether we have AEDPA review or not. Okay, when you're talking about the first PCR, are you? Yeah. We believe that the way that the claim was raised in the State court, it isn't so much with the first PCR as it is during the sentencing proceeding. What occurred at the resentencing proceeding, counsel after the, when they were having the argument regarding whether or not he should be, get the option of either having resentencing as outlined by the PCR court or whether he should receive a new trial. His trial counsel at the resentencing proceeding did argue that based off of Roper, he was not in, he should be entitled to a new trial because he was not going to get the benefit of the bargain. And that was ultimately ruled on by the resentencing court, finding that Roper did not apply to the case. And that was what was taken up in the appeal from the resentencing. That was the argument that was raised, part of the argument that was raised by the appellant in that, and it was ruled by the South Carolina Supreme Court that Roper did not apply. While it wasn't directly on point as an involuntary guilty plea, it was the essence of the claim was raised in the sense that they were contending that. I understand that. See, excuse me, what this record reads to me is it's one of these odd situations where this is exhausted, but not raised so that EDPA applies. The Roper claim. As I say, I'm not sure that makes any difference, except it does make a difference on whether we apply EDPA now. Yes. And I would submit that the State determination on the merits on Roper, I'm not sure we do. And I would agree, Your Honor, in the fact that the In your brief, you seem to concede that. Well, in the brief, I believe that I argue that the South Carolina Supreme Court found that Roper did not apply to Did they address it squarely? Just when you told me just a few minutes ago, you said no, they didn't. Well, they didn't address whether his guilty plea was involuntary as a result of Roper, but they did address the issue of whether Roper applied to the case. And so states How else would it apply? And that's I mean, essentially, that is the crux of the state's position is that Roper doesn't apply because the Mr. Dingell was never subject to a death sentence. Well, I don't know. I guess I don't understand. Maybe this is just semantic, but I don't understand what you mean when you say Roper doesn't apply. I mean, he was subject to a death sentence at the time he entered into his plea, right? He was, but he never I thought the argument was just look, under Brady, under Brady, it doesn't matter that it turns out that the penalty to which he was subject at the time he entered into his plea is no longer on the table. It just doesn't matter. But I'm not sure that that means Roper doesn't apply. Roper does apply. It's a substantive rule. It applies on habeas. And I guess when I say that Roper doesn't apply, what I mean is that it doesn't apply to his particular case because He doesn't get relief under Roper. Yes. Because he was not he did not receive a death sentence. And Roper, when it applies retroactively, it Well, I mean, essentially, our argument is that it would not apply to Mr. Dingell because he was not he did not receive a death sentence. And when Roper applies retroactively, it applies to those cases where an individual like it grants relief to individuals who are who have a death sentence. And since Mr. Dingell did not have a death sentence, it did not apply to him when it would apply retroactively. That that's the gist of the respondent's position in regards to the application of Roper retroactively. It did not it does not apply because he is not he does not have a death sentence. And we submit that there is no United States Supreme Court president that indicates that Roper would apply to those individuals who were did not receive a death sentence. And this is something that's also borne out by cases that have been decided in a number of other courts. There are several cases out of Kentucky. There's also lovelessly Indiana out of Indiana. Several district court cases that were unpublished and also a case out of North Dakota. Owens v. Russell and in a case out of Pennsylvania that all hold that Roper. This is in the Brady case. The Supreme Court said, you know, if you're death eligible and then for some reason, and you plead in order to avoid the death penalty and that some reason at some later point in time, you would not have been death eligible. The Supreme Court didn't make any exception for the reason someone was death eligible at the time the plea was taken. In other words, it seemed to me in reading Brady that it applied generically to those who were death eligible at the time that a plea was taken. And then later developments in the law would not have made that individual death eligible had the plea been taken at a later date after those developments and the Supreme Court said that doesn't upset the earlier plea. And in that decision, they don't make any distinction about the reason one was death eligible at the time the plea was taken. That is the ordinance interpretation of how Brady would apply in this case, Your Honor, that Brady does not make any distinction between why one may no longer be subject to death penalty. Of course someone would be death eligible. I mean, the language in Brady is general. Yes. And in light of that, we believe that it was, in light of the language that's in Brady, it was not unreasonable for the South Carolina Supreme Court to find that Roper didn't apply to Mr. Dingell. So that's sort of your argument with Brady, assuming we're under deferential review, that we're just asking it's an unreasonable application of Brady. Is it important to your case that we be under this deferential review? What's the answer if we're looking at it de novo? We believe that even if you look at it de novo, Roper still doesn't apply to Mr. Dingell's case, and he's still not entitled to relief. His guilty plea was not involuntary because under Brady, he still, at the time that he pled guilty, he was working under the prevailing law at the time, and under Brady, the fact that there was a change in the law after the fact does not affect the voluntariness of the plea. That is, you're right, that's a holding of Brady. Brady has the one big difference between this case, with this case, doesn't it? And that is how effective, whether the counsel in Brady accurately related the law to his client, and what counsel did here. And to that, Your Honor, I would say that. And that's talked about, I don't know, three or four times in Brady, isn't it? It is talked about in Brady, but I would point to the fact that in Mr. Dingell's case, there was never a finding that his plea counsel were ineffective. If you look at the PCR court's ruling, the first PCR court's ruling, it does note that counsel did give some, that he relied on counsel's advice, but it never makes a specific finding that counsel is ineffective. And if you look at the case that it cited, which is Craddock v. State, if you look at the opinion in that case, that case doesn't even directly go into an ineffective assistance of counsel claim. It goes into whether or not there should be a PCR hearing on an ineffective assistance of counsel claim. If we interpret that as a finding that in fact there was a conclusion that his trial counsel had been ineffective, would you lose here? I don't believe so, Your Honor. Why not? Because he still received the benefit of the bargain that he, from the guilty plea in 1995, which was the ultimate, that was what the PCR court determined was the remedy that he was entitled to, and that's what he received. And thus, in essence, he wasn't prejudiced by any ineffectiveness of, by any deficiency of counsel because he ultimately did receive the benefit of the bargain. And in looking at the PCR court's ruling, I know that there was an earlier question regarding, well, how do you get to the remedy that was proposed by the PCR court? That falls to South Carolina state law in looking at how plea agreements are interpreted and the remedies that are provided if there is, if the plea agreement isn't, I guess, if someone relied upon the plea agreement and the plea agreement isn't, it later on is determined not to have been given the effectuation of the terms that the parties initially agreed to. There, I believe. You're not suggesting there was ineffective assistance here, are there? No, Your Honor. We do not believe that there was any ineffective assistance. In fact, if you look at the plea hearing, it appeared that all parties, including the trial judge, all agreed on what the results of the plea would be. The state was clear that it was believing that the sentence that he would receive was a life with parole eligibility after 30 years. The court went over that. Trial counsel went over that. It's just once it got to the Department of Corrections and they ran it through their system, that that was when everyone found out that that was not how, the way that the sentence was imposed, that that was not going to be the result. Your point is there's no evidence at the time that this plea was taken that counsel was ineffective in some way. That is our position, Your Honor, that there is no evidence that counsel was ineffective at the time of the plea. Can I just ask you a very minor factual question? I'm just, this is such a complicated case procedurally and I'm trying to put it together. Was there a six-year gap between the PCR court grants relief and then nothing happens for six years? He's in jail without an effective prison, without an effective sentence? That is what the record appears to show. Do you happen to know what happened? I do not, and unfortunately the way it kind of worked out, over that period of time, folks from our office came in and out, also the folks that were at the solicitor's office. There was a change in solicitors and we have no idea why there was such a long gap in between the ruling from the PCR court and the hearing that led to the resentencing. Was it a new lawyer who filed the motion for a speedy trial? Yes. It does make you wonder a little bit about the original counsel, right? His client is sitting in prison without an effective sentence for six years and he doesn't do anything? Well, in my recollection of looking at the order that the PCR court filed, it did note that new counsel should be appointed for the resentencing. And that, if I was to speculate as to what may have happened, that may be where part of the reason for the gap lies in that maybe counsel wasn't appointed as soon as the order was filed. But I would say that doesn't speak to whether or not plea counsel was ineffective because at that point they were no longer on the case. Can I ask you another question similarly that I just don't understand? The PCR court remanded this, right? Yes. But the PCR court is a trial court. It is. What is it remanding here, Stu? It is remanding it to the Court of General Sessions. One is a criminal court and one is a civil court? Yes, Your Honor. And the way that post-conviction relief actions are handled in South Carolina, post-conviction relief actions are actually civil actions. And there are limitations on what a trial judge and a PCR action can do in terms of applying the remedy. Like they can outline the remedy, but they can't necessarily enforce the remedy themselves. Typically what would happen is they will send it back to the General Sessions Court for effecting the remedy. There are ways in which we can begin to sort of look at this question and that question, but I wonder if we don't move a bit far away from the straightforward question of law in which we granted a certificate of appealability, which was whether the later issuance of Roper v. Simmons rendered the earlier plea, assuming the allegations were correct, somehow rendered that invalid. As I understand it, that's just the question of law that's posed frontally to us. And the question I have for you is if we go into this procedure and that procedure, don't we move away from the question on which we granted the certificate? I would say to some extent we may, but ultimately we still believe that Mr. Dingell is not entitled to relief because Roper doesn't apply to his case. And I know dealing with all of the other issues, whether plea counsel is ineffective. There may be other reasons he's entitled to relief. I have no idea. But the only question I'm saying that I feel is before us is whether the later issuance of Roper v. Simmons entitles him to relief. That's a different question from other grounds. Yes, Your Honor. And to address just the question that this court has issued the certificate of appealability, the issue on which the court issued the certificate of appealability, Mr. Dingell is not entitled to relief because Roper doesn't apply to his case. And, I mean, his guilty plea was- Some of these other questions came up, but the order that was issued by the clerk's office said that certificate of appealability is denied as to all of the claims in Dingell's 2254 petition. And the issue, as we all know, is whether Roper can be applied retroactively to invalidate the guilty plea, where he allegedly pled guilty to avoid the death penalty. And so we granted a certificate of appealability there, and we're arguing it there, but we explicitly denied certificate of appealability as to these other claims. Yes, Your Honor. And, again, we submit that Roper does not allow for relief in this particular case because it does not apply to Mr. Dingell. And as a result of that, we would request that this court affirm the district court's denial of federal habeas relief in this action. And just remand it to effectuate the district court's order in that regard. Unless there are any other questions from the court, I will see the remaining of my time.  I think it's very important, again, what I said at the beginning. If the State cannot do what it did to Dingell today, then Dingell is entitled to relief. And I don't think there's really any contention that today the State of South Carolina cannot proceed against a 17-year-old defendant, notice the death penalty, trigger these mandatory punishments, and then hold him to a plea that the evidence suggests that the only reason he held that he pled guilty was because they were pursuing the death penalty against him. And, again, if the State can't do that today, it can't hold Mr. Dingell to what he did back then. You're saying that the answer is, yes, Roper v. Simmons applies retroactively. That's how you would answer the question posed in a certificate of appealability. But, you know, there's some genuine problems with that. First of all, whether it applies. Second of all, whether you can maneuver around Brady. And, you know, I keep repeating, they can't do, if they couldn't do what they did today, then they couldn't do what they did at the time. Well, can I just stage the conclusion? Well, and I think the answer, though, is that it's a substantive rule. Nobody disagrees with that. I think the problem, at least for me, is, yes, it's a substantive rule. But that, what you're saying is, what you read from that is, if you have exactly the situation that you had back then, now Roper would require a different result. But that's, but it's not, it wouldn't, if you had the same situation, you'd have already been on habeas review in a situation where Roper didn't exist at the time. And where we had the law about what we do in situations like this from Brady. So you're comparing apples and oranges. Straight up, you're right. It couldn't be done either time. But you can't extrapolate from that the results you wish here, I don't think. I mean, you see the logical difference, right? I mean, I grant that there is an intuitive appeal to the state's position. The state's position is that they say, look, Stanford v. Kentucky was controlling at the time, and therefore we didn't do anything wrong in pursuing the death penalty against them at that time. And the reality is, I think a good case for this is to say, look, okay, grant the initial presumption that the thing is substantive and applies equally backwards and forwards in time. And what that means is that we realize now something about the plea environment in 1995 that wasn't, that we didn't know back then. And that is, and again, I'm not saying that the state intentionally did anything wrong, but there was a misrepresentation about what the state could actually do to Mr. Dingell. There wasn't, not in terms of the law at the time, but these collateral questions that you would have attached to your argument, whether there was some flaw in the proceeding or whether the counsel may have been ineffective. I mean, maybe so, maybe not, but that would be, that would come out on direct appeal, or it would come out in the state PCR proceeding, or it would come out in the earlier habeas. We have many, many mechanisms to correct those, to look into those allegations. And there's been no deficiency of process here, and, but what we have is a question of whether Roper and Montgomery should simply be applied to invalidate a guilty plea that we have to assume for purposes of this record was validly taken. And I'm still not sure how you get to that point. Well, and just to briefly answer, I think, so Roper says, you know, hey, we realize that, you know, going forward, or we realize that states in the interim have relied on Stanford v. Kentucky, and yet Roper said that's not going to stop us from changing the rule. And once you change the rule, and I guess the essence of our argument is if Roper has an effect going forward, I mean, it's a substantive rule. That effect has to have the same effect going backward. And the fact that the State relied on outdated law at the time doesn't change the coercive nature of the plea environment. So just to make sure I understand, your position is that when the Court decides Roper and says that that's a substantive rule, maybe in Montgomery, what it's saying is not that there has been a change in the law, but that at the time the law has always been that it is cruel and unusual punishment to subject a minor to the death penalty or to the threat of the death penalty. The law hasn't changed. It turns out everybody got it wrong in those early years, but the law has always been that this is an Eighth Amendment violation. So now we know that when this plea was taken, a penalty that was off the table then, in this kind of theoretical sense, was used to coerce a plea. That's the idea? If I may answer her question, Your Honor. Thank you. Yes, that's exactly it, yeah. And I can elaborate on that if you want. Of course, that's not exactly the way it was briefed in the Supreme Court, is it? In what case, Your Honor? In Roper. I mean, Roper wasn't making the claim, this has always been the law. He was arguing for a new rule. That is correct. And, of course, you know, the Supreme Court said it's a substantive rule, so it applies backwards, too. I understand it said that, but it didn't say this has always been the law, either. That's right. Because it hadn't been. Your position is, I mean, if a substantive rule applies retroactively, then a substantive rule applies retroactively. But how did the substantive rule here didn't apply to Roper? There was no one was sentenced to death. The juvenile wasn't sentenced in violation of Roper. All that happened was that the substantive law, at the time the plea was taken, Roper entered the calculus. And Brady says, all right, this rule can enter a calculus, but that's the case with guilty pleas all the time, that the strength of the State's case or the penalty that the State can impose, all of that is going to enter the calculus. But that's a totally — saying Roper entered the calculus is a totally different question, it seems to me, from whether the substantive rule applies, because he wasn't subjected to the death penalty. He wasn't subjected to life imprisonment. He got what seems to be a pretty good bargain. So if you want to argue that all substantive rules apply retroactively, you can argue that. But this didn't apply. He wasn't — all it did was just enter the calculus of plea bargaining. And there's a difference between entering the calculus of plea bargaining and actually applying the substantive rule to sentence somebody to death. Your Honor, if I may address that. I think the important consideration is, does Roper have consequences going forward? And to the extent that it has consequences going forward, and obviously it would in the case of a 17-year-old defendant, you know, tomorrow, then to the extent that a substantive rule has consequences, those consequences have — I mean, what you're suggesting is an awfully broad ruling, which is that any time there's a substantive rule that comes along, and it may have played some part in the normal give and take of plea negotiations, that we use that rule to subsequently invalidate the plea. And all I can say is the consequences of that ruling are very, very broad, and I'm not the Supreme — I don't think the Supreme Court's come anywhere near that. And I will say in Montgomery, you know, the Court talks about how a substantive rule can have procedural implications, right, implications that we may not perhaps first expect. And, of course, there they were talking about Miller. And Miller, of course, said, hey, we're a procedural ruling. And then in Montgomery, they said, well, actually — Thank you. Okay. Thanks, Your Honor. Do you have any further questions? Pam? I see that your court appointed Mr. Stemfort, and I want to thank you very much for your argument before us today. We've come down, recounted, and moved.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Pamela A. Harris